IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ROBERT HENSON, | : :  |
| Plaintiff, | : : : Civil No. 22-cv-6479 (RBK/MJS) |
| v. | : : **OPINION** |
| DAIMLER TRUCK NORTH AMERICA LLC, | : : : |
| Defendant. | : : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Daimler Truck North America LLC's Motion to Dismiss Plaintiff's Complaint (ECF No. 6). For the reasons set forth below, Daimler's Motion is **GRANTED** in part and **DENIED** in part.

**I.   BACKGROUND**

The following facts are taken from the allegations in Plaintiff's complaint, which we accept as true for the purpose of deciding this Motion. Plaintiff Robert Henson was employed by Defendant as an order selector beginning around March 2019. (ECF No. 1 Ex. A ("Compl.") ¶¶ 5–6). On November 16, 2021, Plaintiff was involved in a two-person accident while operating a company vehicle. (*Id.* ¶ 9). The coworker involved in the accident admitted being primarily at fault. (*Id.*). No individuals were injured in the accident. (*Id.*). At the time of the accident, Plaintiff was not under the influence of any substance and he was not suspected of being under the influence by any manager or supervisor. (*Id.* ¶ 10). However, in accordance with Daimler's

1

safety policy, both parties who were involved in the accident were subjected to a drug test. (*Id.* ¶ 11). Prior to taking the drug test, Plaintiff informed his manager that he had engaged in recreational use of cannabis outside the workplace two weeks earlier, and therefore he expected his drug test to show a positive result. (*Id.* ¶ 12). Plaintiff's manager told him that he must still take the drug test or face immediate termination. (*Id.*). Plaintiff participated in the drug test and tested positive for marijuana. (*Id.* ¶ 13). Because of this result, Plaintiff was immediately suspended without pay. (*Id.*).

On November 18, 2021, Plaintiff learned that marijuana had been decriminalized in the State of New Jersey and that, under the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernizaiton Act ("CREAMMA"), it is unlawful for an employer to subject an employee to adverse action based solely on the presence of cannabinoid metabolites in the employee's bodily fluid. (*Id.* ¶ 15) (citing 2021 N.J. ALS 16, 2021 N.J. Laws 16, 2021 N.J. Ch. 16, 2020 N.J. A.N. 21). Upon learning this, Plaintiff called his manager to voice his concerns about the legality of his suspension and stated that he believed the adverse action against him was contrary to CREAMMA. (*Id.* ¶ 16). Plaintiff followed up the phone call with an email, in which he linked to an article outlining the CREAMMA statute and its implications for employees. (*Id.*).

Due to his suspension without pay, Plaintiff submitted a claim for benefits with the New Jersey Department of Labor. (*Id.* ¶ 18). His claim was denied on December 20, 2021, on the basis that his suspension was due to misconduct. (*Id.* ¶ 19). On January 5, 2022, Plaintiff received a termination letter from Daimler stating that he had been terminated as of November 30, 2021. (*Id.* ¶ 20).

Plaintiff appealed the decision denying his claim for benefits. On January 24, 2022, the Appeal Tribunal reversed the earlier determination, finding that "[a]lthough employers may maintain Drug and Alcohol Free Workplace policies including prohibiting the use of marijuana products during work hours or being under the influence of marijuana at the workplace…, a positive result for marijuana alone, does not allow for adverse action by the employer." (*Id.* ¶ 21).

Plaintiff commenced the instant action in the Superior Court of New Jersey, Law Division, Salem County, on October 4, 2022. (ECF No. 1 ¶ 1). The Complaint raises two causes of action: (1) violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19, *et seq.* and (2) wrongful discharge in violation of public policy. (Compl. ¶¶ 30–42). The Complaint also includes a third count in which Plaintiff requests equitable relief. (Compl. ¶¶ 43–50). On November 11, 2022, Defendant removed the action to this Court. (*Id.*). Defendant now moves to dismiss the Complaint. (ECF No. 6 ("MTD")).

## II.  LEGAL STANDARD

When deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of

3

[his or her] claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

"When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are 'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F. 3d 256, 260 (3d Cir. 2006) (noting that, when "evaluating a motion to dismiss, [a court] may consider . . . any matters incorporated by reference or integral to the claim"). "Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment,"

since a "plaintiff obviously is on notice of the contents [of] the document, and the need for a chance to refute evidence is greatly diminished." *Mills*, 406 F. Supp. at 372 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993) (internal quotations omitted)).

### III.   DISCUSSION

A cause of action for wrongful termination under New Jersey common law requires a plaintiff to show that he was terminated "contrary to a clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980). This requires the plaintiff to (1) "identify the clear mandate of public policy" and (2) show "that the discharge itself was in violation of that public policy." *Dillin v. Constr. & Turnaround Servs., LLC*, 2015 WL 5545236, at *8 (D.N.J. Sept. 18, 2015) (quoting *Brangan v. Ball Plastic Container Corp.*, 2012 WL 1332663, at *7 (D.N.J. Apr.17, 2012)); *see also Daniels v. High Point Bd. of Educ.*, Dkt. No. A-1112-17T1, 2019 WL 166578, at *1, 3 (N.J. Super. App. Div. Jan. 11, 2019); *Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81, 102 (2008).

The New Jersey Conscientious Employer Protection Act ("CEPA") prohibits employers from taking "any retaliatory action against an employee" who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ." N.J. Stat. Ann. § 34:19–3. To state a claim under CEPA, a plaintiff must demonstrate four elements:

> (1) he or she reasonably believed that his or her employer's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19–3 c; (3) an adverse employment action was taken against him or her; and (4)

5

a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Young v. Twp. of Irvington*, 629 F. App'x 352, 356 (3d Cir. 2015). To meet the first element, the plaintiff must identify "the specific terms of a statute or regulation, or the clear expression of public policy, *which would be violated if the facts as alleged are true.*" *Dzwonar v. McDevitt*, 177 N.J. 451, 463 (2003) (emphasis in original).

### A. Wrongful Termination

To state a claim for wrongful termination, Plaintiff must plead facts to show that his termination was in violation of a clear mandate of public policy. The Complaint asserts that Defendant violated the provision of CREAMMA that prohibits employers from taking any adverse action against an employee solely due to the presence of cannabis in the employee's system. (Compl. ¶ 34) (citing 2021 N.J. ALS 16, 2021 N.J. Laws 16, 2021 N.J. Ch. 16, 2020 N.J. A.N. 21). CREAMMA was enacted by the New Jersey State Legislature in order to implement the right to consume cannabis under the recently-added Section VII of Article IV of the State Constitution. (ECF No. 9 at 1). The section of CREAMMA relevant to this case is titled, in part, "Protection from employment discrimination," and it provides:

> No employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions, or other privileges of employment because that person does or does not smoke, vape, aerosolize or otherwise use cannabis items, and *an employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid* from engaging in conduct permitted under P.L.2021, c. 16 (C.24:6I-31 et al.). *However, an employer may require an employee to undergo a drug test* upon reasonable suspicion of an employee's usage of a cannabis item while engaged in the performance of the employee's work responsibilities, or upon finding any observable signs of intoxication related to usage of a cannabis item, or *following a work-related accident subject to investigation by the employer*. A drug test may also be done randomly by the employer, or as part of a pre-employment screening, or regular screening of current employees to determine use during an employee's

> prescribed work hours. *The drug test shall include scientifically reliable objective testing methods and procedures, such as testing of blood, urine, or saliva, and a physical evaluation in order to determine an employee's state of impairment*. The physical evaluation shall be conducted by an individual with the necessary certification to opine on the employee's state of impairment, or lack thereof, related to the usage of a cannabis item in accordance with paragraph (2) of this subsection. *The employer may use the results of the drug test when determining the appropriate employment action concerning the employee*, including, but not limited to dismissal, suspension, demotion, or other disciplinary action.

N.J.S.A. 24:6I-52(a)(1) ("the statute") (emphases added).

Defendant raises two arguments to support its position that Plaintiff's termination did not violate the statute. First, Defendant argues that, due to another CREAMMA provision that waives the physical evaluation requirement to determine an employee's present state of intoxication, Defendant was permitted to rely solely on the drug test to take adverse action against Plaintiff. Second, Defendant argues that it was required to terminate Plaintiff in order to maintain a drug free workplace, which Defendant is required to do as a federal contractor. We address each argument in turn.

Defendant first argues Plaintiff's termination did not violate CREAMMA due to a regulation adopted by the New Jersey Regulatory Cannabis Commission, N.J.A.C. 17:30-2.1(e), which temporarily waives the statute's requirement for a "physical evaluation." It states:

> Notwithstanding the provisions of N.J.S.A. 24:6I-52, until such time that the Commission, in consultation with the Police Training Commission established pursuant to N.J.S.A. 52:17B-70, develops standards for a Workplace Impairment Recognition Expert certification, no physical evaluation of an employee being drug tested in accordance with N.J.S.A. 24:6I-52 shall be required.

The suspension of the physical evaluation was in place at the time Plaintiff was drug tested. (MTD at 13). The purpose of requiring a physical evaluation, according to the statute, was to "to determine an employee's state of impairment," a question which the currently available bodily fluid-based drug tests cannot answer due to the relatively long period of time cannabinoids

7

remain present in a person's system. (*See* ECF No. 9 at 7 n.2). The waiver of the physical evaluation means that, when an employer administers a drug test, the employer may do so without performing a physical evaluation to determine the employee's "state of impairment" in the workplace. Defendant concedes that "[i]f the portion of the statute requiring the drug test be confirmed by a physical evaluation was operative at the time of the incident, Daimler would not have been able to suspend or terminate Plaintiff." (MTD at 13). However, Defendant argues Plaintiff cannot show his termination was in violation of public policy because "CREAMMA expressly and explicitly allowed Daimler to drug test Plaintiff after his accident as part of the Company's post-accident investigation and to use the failed drug test in deciding whether to terminate him." (MTD at 12–13). Defendant argues that "Plaintiff was not terminated '*solely* due to the presence of cannabinoid metabolites in [his bodily fluid.'] Instead, Plaintiff was terminated after a failed drug test following a workplace accident which is expressly allowed under CREAMMA." (MTD at 15).

With questions of statutory interpretation, a court's "primary goal" must be to determine the New Jersey Legislature's intent. *Fletcher v. Cessna Aircraft Co.,* 412 N.J. Super. 530, 534 (N.J. Super. Ct. App. Div. 2010) (citing *Higgins v. Pascack Valley Hosp.,* 158 N.J. 404, 730 A.2d 327, 334 (N.J.1999)). The court must look first to the language of the statute; if the language is clear, it controls. *Id.* If the language is ambiguous, the court must "'seek to effectuate the fundamental purpose for which the legislation was enacted.'" *Id.* (quoting *Klumb v. Bd. of Educ. of Manalapan–Englishtown Reg'l High Sch. Dist., Monmouth County,* 199 N.J. 14, 970 A.2d 354, 361 (N.J.2009)). The New Jersey Supreme Court has also held that a literal interpretation of a statutory provision should be avoided if such an interpretation would be inconsistent with the purpose of the statute. *Young v. Schering Corp.,* 141 N.J. 16, 660 A.2d

8

1153, 1158 (N.J.1995). "'[W]ords and phrases shall be read and construed with their context.'" *Soto v. Scaringelli*, 189 N.J. 558, 570–71 (2007). "When the plain language of an act presents apparent inconsistencies," the court must "seek the interpretation that will make the most consistent whole of the statute." *State v. A.N.J.*, 89 N.J. 421, 424 (1985).

We begin by looking to the language of the statute. The statute's first sentence provides that "an employee shall not be subject to any adverse action by an employer *solely due to* the presence of cannabinoid metabolites in the employee's bodily fluid." N.J.S.A. 24:6I-52(a)(1). This language is clear. An employer cannot terminate or take other adverse action against an employee if the only reason for that adverse action is the presence of cannabinoid metabolites in the employee's bodily fluid. The subsequent sentences of the statute describe when an employer is permitted to drug test employees and permits employers to rely on those drug tests in deciding whether to take adverse actions against employees. However, while the statute permits an employer to rely on a positive drug test result for cannabis in taking an adverse action against an employee, this permissive language must be interpreted to be consistent with the first sentence of the statute. Adverse action can be taken against an employee based on, but not *solely due to*, the presence of cannabinoid metabolites in the employee's bodily fluids.

Here, the facts alleged support a finding that Defendant impermissibly relied solely on the drug test in suspending and terminating Plaintiff. Plaintiff alleges he was suspended without pay "immediately" after his drug test showed a positive result for cannabis, and was eventually terminated based on the result of the drug test. (Compl. ¶¶ 13, 20). A decision of the Appeal Tribunal for the New Jersey Department of Labor found the termination was without cause because it was based on "a positive result for marijuana alone." (*Id.* ¶ 21). Defendant argues Plaintiff's termination was not "*solely* due to the presence of cannabinoid metabolites in [his]

bodily fluid" because "Plaintiff was terminated after a failed drug test following a workplace accident which is expressly allowed under CREAMMA." (MTD at 15). This assertion twists the language of the statute. CREAMMA "expressly allows" an employer to drug test an employee following a workplace accident. However, the statute does not expressly allow an employer to terminate an employee based on a positive result for cannabis, even following a workplace accident, if the presence of cannabinoid metabolites is the only reason for the adverse action. According to the facts alleged in the Complaint, Plaintiff was not terminated because he was at fault in the workplace accident, and he was not terminated based on suspicion that he was under the influence of cannabis in the workplace. Such reasons for termination would be permitted under CREAMMA. Instead, the Complaint alleges Plaintiff was terminated *solely due to* the presence of cannabinoid metabolites in his bodily fluids. This is not permitted under CREAMMA.

Next, Defendant argues that Plaintiff's termination was permitted by a section in CREAMMA which states that "[i]f any of the provisions set forth in [the statute] result in a provable adverse impact on an employer subject to the requirements of a federal contract, then the employer may revise their employee prohibitions consistent with federal law, rules, and regulations[.]" N.J.S.A. 24:6I-52(b)(1)(b). Defendant states that this exception applies here because, as "a federal contractor" and "a party to several federal contracts and cooperative agreements," Defendant "must maintain a drug free workplace." (MTD at 6). Defendant asserts that "Plaintiff's termination . . . was necessary to ensure the Company did not violate the terms and conditions of any federal contract or cooperative agreement by." (MTD at 20).

Specifically, Defendant claims Plaintiff's suspension and eventual termination were necessary in order to avoid "running afoul of the federal Drug-Free Workplace Act of 1988, 41

10

U.S.C. §§ 8101 *et seq.*" (*Id.*). That statute requires a federal funding recipient to take specific steps to "provide a drug-free workplace" and to "mak[e] a good faith effort to continue to maintain a drug-free workplace[.]" 41 U.S.C. § 8101(a). We note that the statute focuses specifically on preventing the use of drugs *in the workplace*, a concern which is reflected in the express language of CREAMMA: under the statute, employees may still be disciplined for using cannabis in the workplace. Further, Defendant does not point us to, and we did not find, any provision of the Drug-Free Workplace Act that requires employers to drug-test employees, nor any provision that requires an employer to terminate or suspend employees who fail a drug test. At this stage, Defendant has failed to demonstrate "a provable adverse impact" that would have resulted due to its status as a federal contractor if it had not terminated Plaintiff. Therefore, the limited exception provided in N.J.S.A. 24:6I-52(b)(1)(b) does not apply here.

Plaintiff alleges facts supporting a finding that Defendant terminated Plaintiff solely due to the presence of cannabinoid metabolites in Plaintiff's bodily fluids in violation of CREAMMA. We conclude that Plaintiff has adequately pleaded a common law wrongful termination claim. Defendant's motion to dismiss the wrongful termination claim (Count Two of the Complaint) is therefore denied.

### B. CEPA Claim

Because the Complaint adequately alleges that Defendant in fact terminated Plaintiff in violation of CREAMMA, the first element of Plaintiff's CEPA claim, which requires Plaintiff have a "reasonable belief" that his employer acted in violation of law, is satisfied. We also find the third element, which requires Plaintiff to show that an adverse employment action was taken against him, is met, as Plaintiff alleges Defendant suspended him without pay "immediately after" taking the drug test on November 16, 2021. (Compl. ¶¶ 11, 13). Further, Plaintiff alleges

Defendant terminated his employment on January 5, 2022. (Compl. ¶ 20). The remaining two elements require Plaintiff to show (1) that Plaintiff performed a "whistle-blowing" activity and (2) that there is a causal connection between the whistle-blowing activity and the adverse employment action. Because we find Plaintiff does not allege facts to support the final element, we will grant Defendant's motion to dismiss Plaintiff's CEPA claim.

      Plaintiff must allege facts showing he performed a "whistle-blowing" activity, which occurs when an employee "discloses . . . to a supervisor . . . an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law" or "objects to . . . any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." N.J. Stat. Ann. § 34:19-3(a)(1), (c)(1). To meet this requirement, Plaintiff must allege "that a complaint was made to a supervisor or public body pertaining to his reasonable belief that the party's conduct violated a law, rule or regulation." *Marrero v. Twp. of N. Bergen*, 2016 WL 4046740, at *7 (N.J. App. Div. July 29, 2016). "Courts have declined to view a CEPA plaintiff's proffered complaint as a whistleblowing activity when it makes no references to violations of the law." *Patterson v. Glory Foods, Inc.*, Civil Action No. 10–6831, 2012 WL 4504597, at *8 (D.N.J. Sept. 28, 2012) (citing *Boyle v. Quest Diagnostics, Inc.*, No. 05–CV–4463, 2008 WL 2242443, at *7 (D.N.J. May 29, 2008).

      Defendant argues Plaintiff has not met this element because he "has failed to sufficiently allege he communicated to Daimler . . . [that] he believed the Company violated the law." (MTD at 17). Defendant also argues Plaintiff's communications were "made solely to further Plaintiff's personal interests by attempting to stave off his suspension and termination," and therefore these communications do not constitute whistle-blowing activity under the statute. (*Id.* at 17). Plaintiff

12

argues this element is "clearly satisfied" because the Complaint "alleges that Mr. Henson objected to his supervisor and Mr. Hood the fact that he was facing adverse consequences as a result of his drug test, which he believed was in violation of CREAMMA, subsequently emailing his supervisor information relating to that statute after their conversation." (ECF No. 9 at 16).

Defendant argues Plaintiff's allegations are analogous to those alleged by the plaintiff in *Patterson*. In that case, the court found that the plaintiff's emails to his supervisor could not "be reasonably construed as an objection in the CEPA context" because the emails "did not object to any unlawful conduct in substance" and the Plaintiff made no assertion in the emails that his employers' conduct was "an illegal scheme or unethical act." 2012 WL 4504597, at *9. Furthermore, in the emails, the plaintiff explained to his supervisors how the conduct at issue caused loss to the company and the plaintiff made suggestions "of ways to mitigate the company's losses from a business standpoint." *Id.* The court concluded that "[a]t best, Plaintiff was being critical of a management decision," not objecting to or complaining about what Plaintiff believed was unlawful conduct. *Id.*

In analogizing to *Patterson*, Defendant appears to argue that Plaintiff failed to allege that he communicated to his supervisors that he believed any adverse action taken against him on the basis of the drug test would be unlawful. This is plainly incorrect. The Complaint alleges that Plaintiff "called his direct manager to voice his concerns" about the legality of suspending or terminating his employment on the basis of the results of the drug test. (Compl. ¶ 16). Plaintiff alleges that his direct manager informed Plaintiff that his concerns would be "passed along to . . . the Lead of Operations for Daimler." (*Id.*). Finally, Plaintiff alleges he "followed up this phone call with an email linking to an article outlining the CREAMMA statute and its implications on

13

employers." (*Id.*; *see also* MTD Ex. A (email from Plaintiff to Dustin Gordon attaching a law firm article describing employment protections under CREAMMA)[1]).

These allegations are not analogous to those made by the plaintiff in *Patterson*. There, the court noted that the plaintiff did not mention in any of his emails or other communications the *legality* of the employer's conduct. Instead, the communications objected to the conduct from a business standpoint. Here, in contrast, Plaintiff alleges multiple communications involving at least two of his supervisors in which Plaintiff expressly raised the legality of terminating his employment on the basis of the results of his drug test. Plaintiff's allegations are substantiated in part by Defendant's own exhibit, which shows that Plaintiff's email notified his supervisor of the CREAMMA statute. (MTD Ex. A). We find Plaintiff has sufficiently alleged that "a complaint was made to a supervisor . . . pertaining to his reasonable belief that [Defendant]'s conduct violated a law, rule or regulation." *Marrero*, 2016 WL 4046740, at *7. Therefore, this element of Plaintiff's CEPA claim is satisfied.

However, the CEPA claim still fails because the facts alleged do not show a causal nexus between the whistle-blowing activity and the adverse action taken against Plaintiff. To determine whether a causal connection exists between a plaintiff's protected activity and the adverse employment action, courts should consider all the circumstances surrounding the employment

---

[1] "When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are 'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, when "evaluating a motion to dismiss, [a court] may consider . . . any matters incorporated by reference or integral to the claim"). Here, the Complaint references and relies on the email sent on November 19, 2021, which provided a link to an article about CREAMMA. (Compl. ¶ 17). The email is part of the basis for Plaintiff's CEPA cause of action. (*Id.* ¶ 35). Further, in his reply brief, Plaintiff does not object to the accuracy or authenticity of the email. Therefore, we find that we may consider the email without converting this Motion to Dismiss into a motion for summary judgment.

decision. *See Maimone v. City of Atl. City*, 188 N.J. 221, 237 (2006) (citing *Estate of Roach v. TRW, Inc.*, 164 N.J. 598, 612 (2000)). The requirement for a causal nexus "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." *Maimone*, 188 N.J. 221, 237 (2006). "The temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection." *Id.* (citing *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 550 (App.Div.1995)). However, "the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two.'" *Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 467 (App. Div. 2005) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997)). "Where the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link." *Id.*

  Here, Plaintiff alleges temporal proximity between Plaintiff's whistle-blowing activity and Defendant's termination of Plaintiff's employment. Plaintiff was drug tested on November 16, 2021. (Compl. ¶ 9–11). The drug test produced a positive result for marijuana, although the date of the results are not stated in the complaint. Plaintiff alleges that he was "immediately" suspended without pay. (*Id.* ¶ 13). Plaintiff alleges that he learned about CREAMMA and its protections against employment discrimination on or about November 18, 2021. (*Id.* ¶ 14). On the same date, Plaintiff called his direct manager to voice concerns about his suspension in light of CREAMMA and followed up on the call with an email. (Compl. ¶ 16, 24). Plaintiff was told that his concerns would be "passed along" to the Lead of Operations for Daimlers, Steve Hood. (*Id.*). On December 14, 2021, Plaintiff spoke directly with Hood about Plaintiff's suspension status, although Hood "did not engage regarding Plaintiff's concerns around CREAMMA." (*Id.* ¶

15

17). It is unclear from this allegation whether Plaintiff raised the issue of CREAMMA with Hood during the phone call. On January 5, 2022, Plaintiff received a letter stating that his employment had been terminated as of November 30, 2021. (*Id.* ¶ 20). Thus, fewer than two months passed between Plaintiff's original communication with his direct manager, and less than one month passed between Plaintiff's phone call with the Lead of Operations for Daimler, although it is unclear based on the allegations in the Complaint whether Plaintiff performed a whistle-blowing activity on that call. Based on these allegations, Plaintiff was terminated from his employment with Daimler within one or two months of performing a whistle-blowing activity.

In some circumstances, temporal proximity between whistle-blowing activity and adverse action against an employee is so "unusually suggestive" of retaliatory conduct as to obviate the need for additional allegations to establish the causal nexus. *Young*, 385 N.J. Super. at 467. We do not think this is such a case. As Defendant argues, the allegations also support a finding that Plaintiff's termination was based only on the positive drug test result and had nothing to do with Plaintiff's voicing concerns about Daimler's compliance with CREAMMA. (*See* MTD at 19–20). Plaintiff argues Defendant's proffered reason for Plaintiff's termination is contradicted by Defendant's conduct. Plaintiff points out that he admitted to his supervisor, prior to taking the drug test, that he had used marijuana, and he was not terminated at that time. (ECF No. 9 at 17) (citing Compl. ¶ 12). Further, even after testing positive for marijuana, Plaintiff still was not terminated. (*Id.*). Plaintiff points out that he was only terminated after he notified Defendant that their actions were in violation of CREAMMA. (*Id.*).

While this case presents a close call, we find the facts in the Complaint do not support finding a retaliatory cause for Plaintiff's termination. We note that there is only a two-day gap between Plaintiff's positive drug test and Plaintiff's original communication to his direct

16

supervisor regarding his concerns about CREAMMA. Not until two months after these events was Plaintiff finally terminated. Further, Plaintiff had already been suspended without pay before he raised his concerns about CREAMMA, indicating that Defendant was already considering terminating Plaintiff's employment before Plaintiff's whistle-blowing activity. Because the allegations here support a non-retaliatory explanation for the adverse action taken against Plaintiff, we conclude that Plaintiff has failed to allege facts sufficient to meet the final element of his CEPA claim. Therefore, Plaintiff's CEPA claim (Count One of the Complaint) will be dismissed.

### C.  Equitable Relief

Count Three of the Complaint purports to bring a cause of action for "equitable relief." (Compl. ¶¶ 43–50). As Defendant points out, equitable relief is a remedy and not an independent cause of action. *See ASAH v. N.J. Dep't of Educ.*, 330 F. Supp. 3d 975, 1019 n.25 (D.N.J. 2018) ("[C]ourts within the Third Circuit routinely dismiss stand-alone counts for declaratory and injunctive relief, since such claims are requests for remedies, and not independent causes of action."). Because Count Three fails to state a cognizable legal claim, we will dismiss it.

### IV.    CONCLUSION

For the reasons expressed above, Defendant's Motion to Dismiss Counts One and Three is **GRANTED.** The Motion to Dismiss Count Two is **DENIED**. An Order follows.


Dated:  4/25/2023                                   /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge